UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

DORIS PICHARDO-HERNANDEZ,
                  Defendant.

------------------------------------X

07 Cr. 1040-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On April 28, 2008, Doris Pichardo-Hernandez ("Pichardo-Hernandez" or "Defendant") appeared before this Court and pleaded guilty to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). For the reasons set forth below, Pichardo-Hernandez will be sentenced to 37 months' imprisonment and 2 years' supervised release. Pichardo-Hernandez shall forfeit $730,000 to the United States. Pichardo-Hernandez also will be required to pay a special assessment of $100.

**Prior Proceedings**

On November 14, 2007, Indictment 07 Cr 1040 was filed against Pichardo-Hernandez in the Southern District of New York. Count I charged that from June 2006 to June 2007, in the

Southern District of New York and elsewhere, Pichardo-Hernandez and others conspired to transfer and deliver a large amount of cash, representing the proceeds of illegal narcotics transactions, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the illegal narcotics transactions, in violation of 18 U.S.C. 1956(a)(1)(B)(i).

On April 28, 2008, Pichardo-Hernandez pleaded guilty to Count I in accordance with a plea agreement. Sentencing is scheduled for October 6, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 128 S.Ct. 586 (2007):

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines

2

should be the starting point and the initial
benchmark. The Guidelines are not the only
consideration, however. Accordingly, after giving
both parties an opportunity to argue for whatever
sentence they deem appropriate, the district judge
should then consider all of the § 3553(a) factors to
determine whether they support the sentence
requested by a party. In so doing, he may not
presume that the Guidelines range is reasonable. He
must make an individualized assessment based on the
facts presented.

Id. at 596 (internal citation and footnote omitted). Thus, in addition to analysis of the Guidelines, the sentence imposed here results from consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 128 S. Ct 558, 571 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Picharo-Hernandez's personal and family history.

4

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

From February 16, 2007, through April 19, 2007, the Drug Enforcement Administration ("DEA") conducted a court-authorized interception of wire communications occurring over a cellular phone used by Manuel Soriano Martinez (the "Martinez Phone"). DEA agents intercepted calls between Martinez and Pichardo-Hernandez. Martinez and Pichardo-Hernandez set up meetings during which Martinez provided Pichardo-Hernandez with narcotics proceeds that Pichardo-Hernandez would then launder. For example, on March 1, 2007, at approximately 4:19 p.m., Pichardo-Hernandez spoke to Martinez over the Martinez Phone to tell him that she was near her house, and to call her when he was nearby so that they could meet at her house.

After a DEA agent reviewed subscriber records for the phone used by Pichard-Hernandez, it was learned that she resides at 8352 243rd Street, Bellrose, Queens (the "Residence"). Based in part on this information and the above-described conversation, DEA agents conducted surveillance of the Residence on March 1, 2007. At approximately 6:50 p.m., a DEA agent ("Agent 1")

observed an unidentified man ("UM-1") park in the vicinity of the Residence, and carry a dark-colored duffel bag that appeared to be full from his car toward the rear entrance of the Residence. Approximately 15 minutes later, Agent 1 observed UM-1 leave the Residence without the bag and drive away.

Shortly after UM-1 left the Residence, a second DEA agent ("Agent 2") observed an individual, later identified as Martinez, park in front of the Residence. Martinez removed a light-colored bag that appeared to be full from the trunk of a car, and walked toward the rear entrance of the Residence. Approximately 10 minutes later, UM-1 returned to the Residence with an unidentified female, and both of them walked toward the rear entrance of the Residence.

At approximately 9:40 p.m., Agent 1 observed Martinez, empty-handed, walk up the driveway and away from the Residence. He got into his car and drove away. At approximately the same time, Martinez received a call from an individual later identified as Christina Rosario, a/k/a "Don Tito." During the call, Martinez said, "Your thing [meaning the narcotics proceeds Rosario gave to Martinez] came up short . . . the last thing you gave me, you checked it out yourself?" In response, Rosario said, "Of course, by myself." Martinez then said, "I just turned

in all of yours and yours came to be damaged." Martinez then said "I checked it three times, plus they are really mad because I checked it." Martinez and Rosario then agreed to meet later that day.

In furtherance of this investigation, the special agent spoke with a co-conspirator who has been arrested in connection with this investigation ("CC-1"). CC-1 reported that he sold hundreds of thousands of dollars worth of cocaine in the Bronx, NY, and that the proceeds from those sales were brought to Pichardo-Hernandez at the Residence over the course of an approximately eight-month period in 2006 and 2007.

On June 19, 2007, at the direction of the DEA agents and while wearing a recording device, CC-1 met with Pichardo-Hernandez at the Residence. During the meeting, she told CC-1 that she had to deliver $50,000 that day and that she was sending the money to the Dominican Republic. She later said that she was receiving money from a court that day. She explained that the money from the court was helpful because, if asked, she could say that the $50,000 came from the court and "justify where it came from." CC-1 then told Pichardo-Hernandez that he had $400,000 for her but asked her to lower her rate. In response, she said that she could take $80,000 from CC-1 that day, and could take

another $100,000 from him later that week. She also said that she would not lower her rate because what she was doing was dangerous.

Pichardo-Hernandez was arrested on September 13, 2007. At the time of her arrest, agents seized $6,630 from her home.

**The Relevant Statutory Provisions**

The maximum statutory sentence for violation of 18 U.S.C. § 1956 is twenty years imprisonment. Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence.

The Court may also impose a term of supervised release up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The maximum fine for a violation of 18 U.S.C. § 1956 is $500,000 or twice the gross loss resulting from the offense. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pichardo-Hernandez is eligible for not less than one and no more than five years' probation, pursuant to 18 U.S.C. §

3561(c)(1). Because the offense is a felony, one of the conditions outlined in 18 U.S.C. § 3563(b) must be imposed as a condition of probation, pursuant to 18 U.S.C. § 3563(a)(2).

**The Guidelines**

The May 1, 2008 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for a violation of 18 U.S.C. § 1956 is found in §2S1.1, which provides for an offense level of eight, pursuant to §2S1.1(a)(2). Because the value of the funds laundered was more than $400,000 but less than $1 million, the offense level is increased 14 levels pursuant to §2B1.1(b)(1)(H). Thus, the base offense level is 22.

Because Pichardo-Hernandez was convicted under 10 U.S.C. 1956, a two-level increase is warranted pursuant to §2S1.1(b)(2)(B).

Pichardo-Hernandez has shown recognition of responsibility for the offense. Because of her timely

9

notification of her intention to plead guilty, thus allowing the Government to allocate its resources more efficiently, and because the aforementioned base offense level is 16 or greater, pursuant to §3E1.1(a) and (b), the offense is reduced three levels.

Accordingly, the applicable offense level is 21.

Pichardo-Hernandez has no known criminal convictions. Therefore, she has zero criminal history points and a Criminal History Category of I. Based on a total offense level of 21 and a Criminal History Category of I, the Guidelines range for imprisonment is 37 to 46 months.

The Guidelines range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, Pichardo-Hernandez is not eligible for probation, pursuant to §5B1.1, application note 2.

The fine range for the instant offense is from $7,500 to $500,000 or twice the gross loss resulting from the offense,

pursuant to §5E1.2(c)(3)(A) and (c)(4). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a sentence within the Guidelines framework is warranted.

**The Sentence**

For the instant offenses, Pichardo-Hernandez will be

11

sentenced to 37 months' imprisonment and a two-year term of supervised release.

Pichardo-Hernandez is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Pichardo-Hernandez be supervised by the district of her residence.

As mandatory conditions of her supervised release, Pichardo-Hernandez shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition that defendant shall participate in a mental health program approved by the U.S. Probation Office. Pichardo-Hernandez shall continue to take any prescribed medications unless otherwise instructed by her health care provider. Pichardo-Hernandez shall contribute to the costs of services rendered not covered by third-party payment, if she has

12

the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

The fine in this case is waived. However, Pichardo-Hernandez shall forfeit $730,000 to the United States.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for October 6, 2008.

It is so ordered.

**New York, NY**
**September 30, 2008**

_____
ROBERT W. SWEET
U.S.D.J.